# EXHIBIT B

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

H

Only the Westlaw citation is currently available. This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Tenth Circuit Rule 32.1. (Find CTA10 Rule 32.1)

United States Court of Appeals,
Tenth Circuit.
Chad CUNNINGHAM, Plaintiff–Appellant,
v.
UNIVERSITY OF NEW MEXICO BOARD OF REGENTS; University of New Mexico School of Medicine; National Board of Medical Examiners, Defendants–Appellees.

No. 11–2103.
Aug. 23, 2013.

**Background:** Medical school student brought action against university regents, medical school, and medical license exam board, alleging violations of § 1983, the Americans with Disabilities Act (ADA), the Rehabilitation Act, and breach of contract. The United States District Court for the District of New Mexico, Bruce D. Black, J., granted defendants' motion to dismiss, 779 F.Supp.2d 1273. Student appealed.

**Holdings:** The Court of Appeals, Jerome A. Holmes, Circuit Judge, held that:
(1) state university and its regents were entitled to Eleventh Amendment immunity from student's § 1983 claims;
(2) student's ADA and Rehabilitation Act claims against medical license exam board for denial of disability accommodation were not ripe for review; and
(3) student failed to show how liability could be imposed upon university, even assuming that Irlen

Syndrome qualified as a disability.

    Affirmed.

West Headnotes

**[1] Federal Courts 170B ⟷32**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk29 Objections to Jurisdiction, Determination and Waiver
                170Bk32 k. Pleading. Most Cited Cases

    Court of Appeals would construe district court's decision granting state university and medical license exam board's motion to dismiss medical student's disability-accommodation action for lack of subject-matter jurisdiction as facial attack, where, although district court did not identify its analysis as such, decision addressed only facts found within four corners of student's complaint. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[2] Federal Courts 170B ⟷266.1**

170B Federal Courts
    170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
        170BIV(A) In General
            170Bk266 Waiver of Immunity
                170Bk266.1 k. In general. Most Cited Cases

**Federal Courts 170B ⟷269**

170B Federal Courts
    170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
        170BIV(A) In General
            170Bk268 What Are Suits Against States
                170Bk269 k. State officers or agencies, actions against. Most Cited Cases

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

**Federal Courts 170B ⬤➞272**

170B Federal Courts
   170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
      170BIV(A) In General
         170Bk268 What Are Suits Against States
            170Bk272 k. Injunctive or mandatory relief; declaratory judgments. Most Cited Cases

State university and its regents were state agencies, and thus were entitled to Eleventh Amendment immunity from medical student's § 1983 claims stemming from alleged denial of disability accommodation to take licensing board exam required for continued enrollment, regardless of the relief student sought; state had not waived its immunity, and *Ex Parte Young* exception to immunity had no application. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

**[3] Federal Courts 170B ⬤➞13.10**

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk12 Case or Controversy Requirement
            170Bk13.10 k. Civil rights. Most Cited Cases

State university medical school student's ADA and Rehabilitation Act claims against medical license exam board for denial of disability accommodation turned on contingent future events and asserted contingent future harm, and thus were not ripe for review, as required to confer subject matter jurisdiction over the claims; student failed to submit requested information regarding his need for disability-related accommodation to board after its preliminary denial of accommodation request, depriving board of opportunity to make a final determination, it was unclear what decision board would have made if it had received the requested information, and student's assertion that he would risk his medical career if he took the exam without a judgment entitling him to accommodation did not by itself constitute hardship. Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[4] Civil Rights 78 ⬤➞1069**

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
      78k1059 Education
         78k1069 k. Disabled students. Most Cited Cases

State university medical student, who successfully completed first two years of medical school and passed medical school examinations, failed to show how liability could be imposed upon university in action alleging that university and medical license exam board violated ADA and Rehabilitation Act by failing to reasonably accommodate his disability at board exams necessary for continued enrollment, even assuming that his diagnosed Irlen Syndrome qualified as a disability; student demonstrated that he did not need an accommodation to pass his medical school classes or tests, any need for accommodation would have been for exams that board administered, which were not under university's control, and, to the extent that student averred that university should have changed its program requirements, such an accommodation would not be reasonable. Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 28 C.F.R. § 35.130(b)(7).

Santiago Juarez, Albuquerque, NM, for Plaintiff–Appellant.

Lawrence M. Marcus, Esq., Alfred Alexander Park, Park & Anderson, L.L.C., Albuquerque, NM, for Defendants–Appellees.

Ronda R. Fisk, Shane M. Ham, Osborn Maledon, P.A., Phoenix, AZ, for Defendants–Appellees.

Before LUCERO and HOLMES, Circuit Judges, and BRIMMER, District Judge.[FN*]

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

**ORDER AND JUDGMENT**[FN**]

JEROME A. HOLMES, Circuit Judge.

**\*1** Chad Cunningham appeals from the district court's dismissal of his claims against the University of New Mexico Board of Regents ("UNM")[FN1] and the National Board of Medical Examiners ("Board") (collectively "Defendants"). Mr. Cunningham, a second-year medical student, brought claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. §§ 12101–213, and the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794, as well as state-law breach-of-contract claims, against Defendants after their denial of his requested disability-related accommodation. Defendants filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6). The district court granted the motions, dismissing the federal claims with prejudice and declining to exercise supplemental jurisdiction over Mr. Cunningham's state-law claims. We affirm the district court's dismissal of all of Mr. Cunningham's claims.

**I**

In 2009, Mr. Cunningham successfully finished his second year of medical school at the University of New Mexico School of Medicine. However, he was placed on academic leave until he passed Step 1 of the United States Medical Licensing Examination. Step 1 is the first step in the three-step examination process administered by the Board. In New Mexico, aspiring doctors must pass all three steps to graduate from medical school and earn their medical licenses. Mr. Cunningham already has attempted Step 1 twice, and if he fails again he will be disqualified from further enrollment at UNM. His difficulties in passing the exam allegedly stem from Irlen Syndrome[FN2] and the apparent flare-ups of symptoms of the syndrome caused by the standard testing conditions under which Step 1 is administered.

Mr. Cunningham was diagnosed with Irlen Syndrome in 2006 while on a medical leave of absence from his first year of medical school. Although he has always suffered from a reading dis-

ability, including severe headaches after prolonged periods of reading, Mr. Cunningham was a "superior student" from grade school through college. Aplt.App. at 8. Mr. Cunningham had to repeat his first year of medical school when he returned in 2007. He then requested, and was denied, accommodation from UNM.[FN3]

Despite the denial of an accommodation, Mr. Cunningham went back to UNM and successfully completed his first two years of medical school and passed his medical school examinations. Unfortunately, his headaches and other problems, stemming from prolonged periods of reading, persisted. However, he was able to mitigate the effects of his Irlen Syndrome by using prescription colored glasses and medicines to control his blood pressure.

Notwithstanding these adjustments, Mr. Cunningham could not pass Step 1. Mr. Cunningham first attempted Step 1 in early 2009. The bright, fluorescent lighting in the small Step 1 testing room caused Mr. Cunningham's severe headaches to flare up and resulted in him having difficulty reading and concentrating on the test materials. He failed by a narrow margin.

**\*2** Not to be deterred, Mr. Cunningham applied to take the exam a second time and this time requested an accommodation for his Irlen Syndrome from the Board. To support his request, Mr. Cunningham submitted "several documents including a medical evaluation and diagnosis by a physician and a psychological evaluation by a clinical psychologist that described [his] disability and the accommodation [he] needed" for Step 1. *Id.* at 11. In May 2009, the Board denied his request based upon its preliminary review. In so denying, the Board cited the complete lack of evidence of any formal accommodations in Mr. Cunningham's past and explained that in order for it to review his request further, he needed to provide "extensive and voluminous" records.[FN4] *Id.* at 11–12.

Although the exact timing is unclear from Mr. Cunningham's complaint, in addition to requesting

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

an accommodation from the Board, he made several requests for an accommodation from UNM. And at one point he requested the assistance of the UNM Disability Committee in obtaining the desired accommodation from the Board. None of these efforts was successful.

Nevertheless, Mr. Cunningham continued with his plan to take the test, and took Step 1 for a second time without accommodation. He never provided the requested documentation to the Board, as he allegedly did not have enough time between the Board's denial of his accommodation request and the test date to gather the requested documentation. Once again, Mr. Cunningham failed the test, by essentially the same narrow margin as before.

This second failure left Mr. Cunningham in a quandary: if a medical student fails Step 1 three times, he is disqualified from further medical school enrollment; Mr. Cunningham was placed on academic leave until he passed Step 1 and, by contract with UNM, he is not allowed to work while on academic leave; and, pursuant to UNM's general policy, Mr. Cunningham must complete medical school within six years of his first year, and UNM had informed him that his six years for completing the last two years of his curriculum will expire on October 1, 2012.

Mr. Cunningham filed the instant action against Defendants in May 2010, alleging violations of the ADA and the Rehabilitation Act, and a claim for breach of contract. He also asserted a 42 U.S.C. § 1983 cause of action against UNM alone. Mr. Cunningham sought injunctive relief and damages. Both UNM and the Board successfully moved to dismiss all of Mr. Cunningham's causes of action.

The district court first held that it lacked subject-matter jurisdiction over Mr. Cunningham's § 1983 claim against UNM, as the Eleventh Amendment was not abrogated by Congress when it passed that statute. Next, the district court found that it had jurisdiction over Mr. Cunningham's ADA and Re-

habilitation Act claims but dismissed both claims under Federal Rule of Civil Procedure 12(b)(6). The district court held that, even assuming all of the well-pleaded facts in Mr. Cunningham's complaint to be true, he was not disabled because, *inter alia,* he was able to mitigate the impairment brought on by his Irlen Syndrome. Finally, the district court declined to exercise supplemental jurisdiction over Mr. Cunningham's state-law breach-of-contract claims and dismissed them without prejudice.FN5 This timely appeal followed.

**II**

**\*3** [1] We review de novo the district court's rulings on Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6). *See Muscogee (Creek) Nation v. Okla. Tax Comm'n,* 611 F.3d 1222, 1227 (10th Cir.2010). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may take one of two forms: "A *facial* attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction. A *factual* attack goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction." *Id.* at 1227 n. 1 (emphases added). While the district court did not identify its analysis as such, we construe its decision as being based on a facial attack because it only addressed facts found within the four corners of Mr. Cunningham's complaint. *Cf. id.* at 1227 & n. 1 (construing defendants' motion as a facial challenge where the district court's order was "limited to the four corners of [the plaintiff's] amended complaint"). Notably, Mr. Cunningham and the Board suggest that we may address evidence outside of the complaint, insofar as it pertains to our subject-matter jurisdictional inquiry. Yet, because we conclude that the Board prevails on its jurisdictional challenge, based on our inspection of Mr. Cunningham's complaint alone-under which we "presume" his well-pleaded factual averments "to be true," *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir.2002); *accord City of Albuquerque v. U.S. Dep't of Interior,* 379 F.3d 901, 906 (10th Cir.2004)—we need not exercise our dis-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

cretion to go beyond the complaint's four corners to examine extrinsic evidence, *cf. Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1296 (10th Cir.2003) ("When a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.' " (quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995) )); *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995) ("A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations *in spite of its formal* suficiency by relying on affidavits or any other evidence properly before the court." (emphasis added)). Thus, in effect, we treat the Board's challenge as a facial one.

## III

[2] Turning first to Mr. Cunningham's § 1983 claim against UNM, UNM asserts that as a state agency it is immune from suit on such a claim under the Eleventh Amendment. The district court agreed with UNM and dismissed Mr. Cunningham's § 1983 claim against UNM for lack of subject-matter jurisdiction, finding that UNM was entitled to Eleventh Amendment immunity. "Because state sovereign immunity is a threshold jurisdictional issue, we must address it first when it is asserted by a defendant." *Brockman v. Wyo. Dep't of Family Servs.,* 342 F.3d 1159, 1163 (10th Cir.2003). "We review de novo a district court's dismissal of a complaint for lack of subject-matter jurisdiction." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.,* 693 F.3d 1195, 1201 (10th Cir.2012).

**\*4** Mr. Cunningham responds that his § 1983 claim against UNM is not barred by the Eleventh Amendment because he is requesting prospective relief. [FN6] While acknowledging that he cannot sue UNM for money damages under § 1983 because such a cause of action is not available to him, Mr. Cunningham asserts that the Eleventh Amendment does not bar his claim because the relief he requests

is prospective and does not involve money damages. In this regard, he seeks to rely on the Eleventh Amendment immunity exception that the Supreme Court established in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, Mr. Cunningham misunderstands the law.

The *Ex parte Young* exception is narrow and only applies in certain circumstances, none of which apply here. *See Buchwald v. Univ. of N.M. Sch. of Med.,* 159 F.3d 487, 495 (10th Cir.1998); *Johns v. Stewart,* 57 F.3d 1544, 1552 (10th Cir.1995). More specifically, it applies only in suits against individual defendants in their official capacities—it 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought.' " *Buchwald,* 159 F.3d at 495 (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)).

UNM is a state agency and therefore the *Ex parte Young* exception does not apply to Mr. Cunningham's § 1983 claim against it, regardless of the relief Mr. Cunningham seeks. *See Buchwald,* 159 F.3d at 496 ("Thus, ... the *Ex parte Young* exception does not permit plaintiff to subject [UNM], [or] its Regents ... to suit because they are state agencies...."). Mr. Cunningham's § 1983 claim against UNM was properly dismissed by the district court for lack of subject-matter jurisdiction.

## IV

Turning next to Mr. Cunningham's ADA and Rehabilitation Act claims against UNM and the Board, we again start with the question of subject-matter jurisdiction. Mr. Cunningham alleges that the district court erred in dismissing his ADA and Rehabilitation Act claims against Defendants because he made a sufficient showing that his Irlen Syndrome clearly qualified as a disability. The Board responds by asserting that Mr. Cunningham's claim is not ripe for adjudication and we thus lack subject-matter jurisdiction to hear it. Because ripeness is, like state sovereign immunity, a threshold jurisdictional matter, we must address it before we

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

can reach the merits of Mr. Cunningham's ADA and Rehabilitation Act claims against the Board. After addressing this threshold question, and concluding that Mr. Cunningham's claims are not ripe as to the Board (i.e., that we lack jurisdiction over them), we proceed to address the merits of these claims as to UNM.

With respect to UNM, these claims present a quite different set of circumstances. *Cf. Friends of Marolt Park v. U.S. Dep't of Transp.,* 382 F.3d 1088, 1094–95 (10th Cir.2004) (concluding that one claim was ripe for review and the other was not); *Ernst & Young v. Depositors Econ. Prot. Corp.,* 45 F.3d 530, 535 (1st Cir.1995) ("The ripeness inquiry is often *sui generis.* Most litigation has idiosyncratic features, and the various integers that enter into the ripeness equation play out quite differently from case to case, thus influencing the bottom line."). UNM has not alleged that we lack subject-matter jurisdiction over Mr. Cunningham's ADA and Rehabilitation Act claims against it on ripeness grounds (or otherwise). This fact would be of no moment, if we had a reason to doubt our jurisdiction over these claims. *See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ("[W]e are obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction."); *Kalson v. Paterson,* 542 F.3d 281, 286 n. 10 (2d Cir.2008) ("The fact that neither party raised a jurisdictional issue on appeal is of no matter; we are obligated to determine whether jurisdiction exists *nostra sponte."*); 13B Charles Alan Wright et al., *Federal Practice & Procedure* § 3532.7, at 710 (3d ed. 2008) ("It is clear that ripeness may be raised by a court on its own motion, whether the question turns on theories attributed to the constitution or on prudential theories, and whether or not the parties all wish decision on the merits."). However, we have no reason to doubt our jurisdiction. Therefore, we proceed to address these claims on the merits.

**A**

**\*5** [3] The district court found that, "whether

or not [the Board] denied [Mr. Cunningham's] original request, [his] discrimination claims [against the Board] are still ripe for adjudication, because the issue of imposing an undue burden on the accommodation process creates a live issue." Aplt.App. at 234 (Mem. Op., filed Apr. 20, 2011). The question of ripeness implicates our subject-matter jurisdiction and is thus a question of law which we review de novo. *See New Mexicans for Bill Richardson,* 64 F.3d at 1498–99; *see also Wilderness Soc'y v. Kane Cnty., Utah,* 632 F.3d 1162, 1168 (10th Cir.2011) (en banc) ("We review de novo the district court's determinations regarding subject matter jurisdiction."); *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.,* 259 F.3d 1244, 1249 (10th Cir.2001) ("To fall within our subject-matter jurisdiction, a case must raise issues that are ripe for review.").

For the reasons that we explicate below, we ultimately conclude that the district court erred in finding that Mr. Cunningham's ADA and Rehabilitation Act claims against the Board are ripe. Nonetheless, we affirm the court's judgment in favor of the Board, albeit on the basis of lack of subject-matter jurisdiction, rather than the merits. It is axiomatic that we may affirm a district court's order "on any basis supported by the record, even though not relied on by the district court." *Vaughn v. Epworth Villa,* 537 F.3d 1147, 1150 (10th Cir.2008) (quoting *Seegmiller v. LaVerkin City,* 528 F.3d 762, 766 (10th Cir.2008)) (internal quotation marks omitted).

"The ripeness doctrine is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *United States v. Wilson,* 244 F.3d 1208, 1213 (10th Cir.2001) (quoting *New Mexicans for Bill Richardson,* 64 F.3d at 1499) (internal quotation marks omitted). "In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form." *Id.* (quoting *New Mexicans for Bill Richardson,* 64 F.3d at 1499) (internal quotation marks omitted).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

To determine whether Mr. Cunningham's claim is ripe, we must evaluate two issues: "(1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding judicial consideration." *Id.* The first of these issues—the fitness of the issue for judicial resolution—requires that we "ask 'whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Morgan v. McCotter,* 365 F.3d 882, 890 (10th Cir.2004) (quoting *New Mexicans for Bill Richardson,* 64 F.3d at 1499).

The case before us, as it relates to Mr. Cunningham's claim against the Board, involves just such uncertain or contingent future events that may not occur as anticipated, and indeed may not occur at all. Specifically, the Board's denial was *preliminary;* it explicitly explained how Mr. Cunningham could pursue further review. In other words, the Board's denial was not final. Rather, the Board concluded that it did not have sufficient information to reach a definitive conclusion concerning Mr. Cunningham's request for an accommodation. Implicit in the Board's request for additional information was the possibility that, upon review of such information, the Board could grant Mr. Cunningham's request. However, Mr. Cunningham deprived the Board of the opportunity to make such a final determination because he failed to submit the additional requested information.

**\*6** In his opening brief, Mr. Cunningham argues that this failure does not matter, and "[t]here are no 'hypothetical, contingent events' here," because the Board "has all of the documentation that relates to [Mr. Cunningham's] disability and need for accommodation that exists." Aplt. Opening Br. at 17 (citation omitted).[FN7] Mr. Cunningham, however, has not pleaded any facts to show that the Board had any reason to know that it had all of the possible documentation in front of it. Not only did Mr. Cunningham fail to provide the requested documentation to the Board, he failed to give it a chance to make a final decision with the knowledge that it

had all of the documentation that Mr. Cunningham could provide. Accordingly, Mr. Cunningham's ADA and Rehabilitation Act claims against the Board are not fit for judicial resolution. Contrary to his arguments otherwise, his claims turn on hypothetical, contingent events— *viz.,* the Board's *final* decision to deny his request for accommodation.

Furthermore, this is clearly a case where our review would "benefit from further factual development of the issue[ ] presented." *Utah v. U.S. Dep't of Interior,* 210 F.3d 1193, 1197 (10th Cir.2000). On the facts before us, it is unclear if the Board would grant or deny Mr. Cunningham's application if he filed it with all of the information requested or notified the Board that additional information was unavailable. In particular, we do not know, and cannot say, what would have happened if the Board were given all of the information it needed to make a final determination.[FN8] Cf. *Kober v. Nat'l Bd. of Med. Exam'rs,* No. 09–1772, 2010 WL 2342480, at *2 (W.D.La. June 7, 2010) ("The [Board] may ultimately decide to grant [plaintiff's] request for special testing accommodations once he provides the additional information. If the special testing accommodation is granted, [plaintiff] will not be injured and the basis for his lawsuit will vanish."). Moreover, Mr. Cunningham does not currently have any pending requests before the Board. Cf. *id.* (finding, in a strikingly similar situation to the instant case, that a plaintiff's claim was not ripe for review because "the [Board] has not denied [plaintiff's] request for special testing accommodations and [he] currently has no request pending before the [Board]"). As we have concluded before when determining that a plaintiff's claim is not ripe for review, "[a]t best, further developments would undoubtedly sharpen the factual issues in this case; at worst, the failure of certain contingent events may render a decision completely advisory." *Morgan,* 365 F.3d at 891.

The second inquiry—the hardship to the parties of withholding judicial consideration—"may be answered by asking 'whether the challenged action

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

creates a direct and immediate dilemma for the parties.' " *Id.* (quoting *New Mexicans for Bill Richardson,* 64 F.3d at 1499). Mr. Cunningham asserts that he will "risk[ ] his medical career if he takes the test without a judgment entitling him to accommodation." Aplt. Opening Br. at 18–19. However, this possibility of future harm, contingent on Mr. Cunningham's own actions, does not by itself constitute hardship, *see Morgan,* 365 F.3d at 891; before such an assessment would be appropriate, Mr. Cunningham would at least need to register for the exam and give the Board the chance to fully consider his request for an accommodation. "[P]ostponing decision on this case until [Mr. Cunningham] has suffered some concrete harm"—until the Board has had the chance to make a final review and determination, and *that* determination causes Mr. Cunningham harm—"cannot itself constitute an independent harm to [Mr. Cunningham]." *Id.*

**\*7** The district court therefore erred in finding that Mr. Cunningham's claims against the Board are ripe for review. We conclude that we lack subject-matter jurisdiction over such claims. Nevertheless, because the district court proceeded to dismiss Mr. Cunningham's action against the Board on the merits, we are still situated to affirm its judgment, albeit on the different basis of lack of jurisdiction. FN9

**B**

[4] Even though we do not reach the merits of Mr. Cunningham's ADA and Rehabilitation Act claims against the Board, we must still address his similar claims against UNM.FN10 Mr. Cunningham alleges that the district court erred in finding that he had failed to show that he was disabled because he "has made plausible allegations in his complaint concerning the existence of a disability." Aplt. Opening Br. at 30. The district court dismissed these claims under Rule 12(b)(6), a determination that we review de novo, applying the same legal standard as the district court and accepting as true "all well-pleaded factual allegations in [the]

complaint and view[ing] these allegations in the light most favorable to [Mr. Cunningham]." *Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1178 (10th Cir.2012) (quoting *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir.2009)) (internal quotation marks omitted).

Although we principally focus on Mr. Cunningham's ADA claim, "[b]ecause the [ ] provisions [of the ADA and the Rehabilitation Act] involve the same substantive standards," *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.,* 565 F.3d 1232, 1245 (10th Cir.2009); *see Sanchez v. Vilsack,* 695 F.3d 1174, 1177 n. 2 (10th Cir.2012) ("Regardless of whether suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining whether an individual is disabled are the same."); *cf.* 29 U.S.C. § 794(d) ("The standards used to determine whether this section [of the Rehabilitation Act] has been violated in a complaint alleging ... discrimination under this section shall be the standards applied under [the ADA].")‚ our conclusions apply equally to Mr. Cunningham's Rehabilitation Act claim.

"According to Title II of the ADA, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " FN11 *McGuinness v. Univ. of N.M. Sch. of Med.,* 170 F.3d 974, 978 (10th Cir.1998) (quoting 42 U.S.C. § 12132). Under the ADA, the term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment....". 42 U.S.C. § 12102(1). As Mr. Cunningham made clear during oral argument, Oral Arg. at 9:59–10:17, he argues that because of his Irlen Syndrome, he is substantially impaired in the major life activities of learning and reading. FN12

**\*8** However, even if we were to assume that Mr. Cunningham's Irlen Syndrome qualifies as a

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

disability under the ADA and Rehabilitation Act, he has not shown how liability may be imposed upon UNM for its failure to accommodate it. Notwithstanding his accommodation request to UNM, Mr. Cunningham demonstrated that he did not need an accommodation to pass his medical school classes or tests. Specifically, he successfully completed his first two years of medical school and passed his medical school examinations. Insofar as Mr. Cunningham needed an accommodation, it would have been in the area of taking the examinations that *the Board* administered—examinations that are not under the control or purview of UNM. FN13

Mr. Cunningham argues that UNM's determination that he "had a disability would have materially assisted him in receiving accommodation from [the Board]" and that "an opportunity to present his case to the [UNM] Disability Committee would have given him a reasonable opportunity to argue that the rules should be modified to allow him to continue classes while sorting out his difficulties with [the Board]." Aplt. Opening Br. at 32. However, Mr. Cunningham has not alleged facts that would support an inference that a determination from UNM would have materially affected the Board's own, independent decision regarding the appropriateness of granting him an accommodation—especially since, as discussed above, Mr. Cunningham actually did not permit the Board to make a final accommodation decision, because he failed to provide the information that the Board requested.

To the extent that Mr. Cunningham avers UNM should have changed its program requirements, such an accommodation would not be reasonable. *Cf. McGuinness,* 170 F.3d at 979 ("Requiring the University of New Mexico to advance [plaintiff] to the next level of the medical school program would represent a substantial, rather than a reasonable accommodation."). A public entity is not required to make modifications where the entity "can demonstrate that making the modifications would funda-

mentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see Fisher v. Okla. Health Care Auth.,* 335 F.3d 1175, 1181 (10th Cir.2003) (accord). And, as we have previously explained, "[e]ducational institutions are accorded deference with regard to the level of competency needed for an academic degree." *McGuinness,* 170 F.3d at 979. Compelling an educational institution to change its requirements for advancement through its medical school program "would represent a substantial, rather than a reasonable accommodation," *id.,* because it would "fundamentally alter," § 35.130(b)(7), the nature of the educational services and program it provides. It would therefore be unreasonable for Mr. Cunningham to demand that UNM change its requirements regarding the time it takes to graduate or pertaining to successful completion of the nationally recognized Step 1 test. The district court therefore correctly dismissed Mr. Cunningham's ADA and Rehabilitation Act claims against UNM.

**V**

**\*9** For the foregoing reasons, we conclude that we lack subject-matter jurisdiction to hear Mr. Cunningham's § 1983 claim against UNM and his ADA and Rehabilitation Act claims against the Board. Additionally, we conclude that Mr. Cunningham has failed to state a claim for relief under the ADA and the Rehabilitation Act against UNM. Finally, the district court properly declined to exercise supplemental jurisdiction with respect to Mr. Cunningham's state-law claims. We therefore **AFFIRM** the district court's dismissal of all of Mr. Cunningham's claims.FN14

> FN* The Honorable Philip A. Brimmer, United States District Judge for the District of Colorado, sitting by designation.

> FN** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

FN1. In addition to UNM, the University of New Mexico School of Medicine was also a prevailing party below. Mr. Cunningham argues before us that the School of Medicine was properly joined and that nothing in New Mexico law "prevents the School of Medicine from being named as a party." Aplt. Opening Br. at 33. UNM, however, asserts that Mr. Cunningham "has stated no facts that would allege that the School of Medicine has a separate corporate identity." Aplee. UNM Br. at 1 n.1. UNM further argues that "under New Mexico law, all of the management and control of the University of New Mexico, including ... the capacity to sue or be sued, is vested in the Board of Regents." *Id.* Because we affirm the district court's dismissal as to all grounds, and the legal analysis would be the same regardless of whether the School of Medicine were a proper party to Mr. Cunningham's suit, we need not address whether the School of Medicine is actually subject to suit under the laws of New Mexico and thus a proper party to this suit. In the same vein, we do not perceive a need to distinguish between the Board and the School of Medicine in our analysis; we use the acronym "UNM" to refer to them both.

FN2. Irlen Syndrome, also known as Scotopic Sensitivity Syndrome, "is sometimes categorized as a form of dyslexia[ and is] caused by hypersensitive photoreceptors in the eyes of the afflicted person." Aplt.App. at 9 (Compl., filed May 14, 2010). People who suffer from this syndrome "often have fragmented vision or diminished coherence in their vision and perception while reading, especially where the

material is printed on white paper and under harsh lighting conditions or florescent [sic] lighting." *Id.*

FN3. Mr. Cunningham does not explain the *specific* accommodation that he requested; however, he does describe the general types of accommodations that may be given to one with Irlen Syndrome that involve the adjustment of test-taking conditions: additional time, more breaks, shorter segments, adjusting print and screen colors, and reducing or removing fluorescent lighting.

FN4. Specifically, the Board requested "records going back to elementary school, standardized test scores, contemporaneous reports from teachers, tutors or treatment providers, objective records showing the chronic course and impact of his disability, ... additional reports from employment and other sources that document his disability, and further reports from his psychologist." Aplt.App. at 12.

FN5. Because we affirm the district court's dismissal of Mr. Cunningham's federal-law claims, albeit for different reasons than those relied on by the district court, we do not reach Mr. Cunningham's state-law claims. The district court permissibly declined to exercise supplemental jurisdiction regarding these claims, a decision that we review for an abuse of discretion. *See Koch v. City of Del City,* 660 F.3d 1228, 1248 (10th Cir.2011), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 211, 184 L.Ed.2d 42 (2012). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Id.* (quoting *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998) (internal quotation marks omitted)). The district court only declined to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

exercise supplemental jurisdiction after dismissing Mr. Cunningham's federal claims; in our view, the court did not abuse its discretion.

FN6. To the extent that Mr. Cunningham asserts a § 1983 claim on appeal against the Board, *see* Aplt. Opening Br. at 20–21 ("[The Board of Examiners] has 'acted together with' the medical school in a manner that makes it a state actor subject to an action under § 1983."), we need not consider such a claim because he did not raise it before the district court and has not argued for plain-error review before us. *See Richison v. Ernest Grp., Inc.,* 634 F.3d 1123, 1128 (10th Cir.2011) (explaining that a theory that was not raised before the district court is considered to be forfeited and stating that "we will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result"). Moreover, even if he had made the claim below, it is now waived because it is not adequately set out in his opening brief. *See United States v. Cooper,* 654 F.3d 1104, 1128 (10th Cir.2011) ("It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.' " (alteration in original)) (quoting *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 679 (10th Cir.1998)); *Bronson v. Swensen,* 500 F.3d 1099, 1104 (10th Cir.2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

FN7. In his complaint, however, Mr. Cunningham alleged that this failure to furnish the requested additional documentation was because he "was not able to gather the documentation required by [the Board] in the short time between the denial of his request for accommodation and the test date." Aplt.App. at 12.

FN8. Mr. Cunningham argues that "it is entirely safe to say that a further request would also be rejected if [he] had been able to comply in time for the June 2009[ test date], or had he taken the additional steps of extending the test window as described by the [Board]." Aplt. Opening Br. at 17. We disagree. Mr. Cunningham cites to no allegations in his complaint and no case law to support such a contention. Mr. Cunningham further argues that, despite having the amended complaint since March 14, 2010—a document that contains "the complete facts" regarding Mr. Cunningham's disability—the Board "has made no offer to provide reasonable accommodation and [thus] the Court may presume that it does not intend to do so." *Id.* at 17–18. However, Mr. Cunningham fails to explain why the Board should be expected to make such an offer, or even how it would do so. In that regard, Mr. Cunningham does not have a pending request before the Board, nor has he registered for, or even stated that he will register for, another administration of Step 1. Thus there is no specific action for the Board to take.

FN9. In addition to arguing that we lack subject-matter jurisdiction because Mr. Cunningham's ADA and Rehabilitation Act claims are not ripe, the Board asserts that his Rehabilitation Act claim "fails because [the Board] does not receive federal financial assistance as required for claims under the Act." Aplee. Board Br. at 26. However, we exercise our "leeway 'to choose among threshold grounds for denying audience to a case on the merits,' " *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431, 127 S.Ct.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))
**(Cite as: 2013 WL 4492168 (C.A.10 (N.M.)))**

1184, 167 L.Ed.2d 15 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)), and dispose of both Mr. Cunningham's ADA and Rehabilitation Act claims on ripeness grounds. Thus, we need not address whether the Board is a state actor with liability under the Rehabilitation Act.

FN10. While Mr. Cunningham clearly asserted a Rehabilitation Act claim against UNM in his amended complaint, he does not explicitly assert error on appeal regarding the district court's dismissal of this claim. Instead, he focuses on his ADA and Rehabilitation Act claims against the Board and only presents arguments regarding his ADA claim against UNM. Thus, we are presumably presented with an issue of waiver regarding Mr. Cunningham's Rehabilitation Act claim against UNM. *See Cooper,* 654 F.3d at 1128 ("It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.' " (alteration in original) (quoting *Adler,* 144 F.3d at 679)). However, UNM does not argue for waiver and we have "discretion to ignore the waiver." *United States v. Montgomery,* 550 F.3d 1229, 1231 n. 1 (10th Cir.2008). Because Mr. Cunningham's ADA and Rehabilitation Act claims involve the same substantive standards, *see* discussion *infra,* and our analysis and result would be the same regardless of whether we address Mr. Cunningham's ADA claim standing alone or in conjunction with his Rehabilitation Act claim, we exercise our discretion here and address both claims.

FN11. The language under the Rehabilitation Act is quite similar: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

FN12. Learning and reading are explicitly listed as "major life activities" under 42 U.S.C. § 12102(2)(A).

FN13. To the extent that he attempts to pursue on appeal the argument set out in his complaint that UNM "arbitrarily refused ... to assist him in gaining accommodation from [the Board]," Aplt.App. at 13, he has not shown any duty on behalf of UNM to control the Board or petition to it on his behalf. Nor has he shown any vicarious liability such that the Board's actions could be charged against UNM; notably, he has not alleged that UNM exerted control over the Board. *Cf. E.E.O.C. v. Wal–Mart Stores, Inc.,* 187 F.3d 1241, 1247 (10th Cir.1999) (explaining that in resolving the issue of whether conduct could be imputed to an employer for the alleged ADA violations of its employees "we rely on traditional agency principles as developed by the common law"). Accordingly, such an argument would fail.

FN14. We also **grant** the pending motion to withdraw of Mr. Cunningham's counsel.

C.A.10 (N.M.),2013.
Cunningham v. University of New Mexico Bd. of Regents
--- Fed.Appx. ----, 2013 WL 4492168 (C.A.10 (N.M.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.